UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Andrew Callari | | Charles Douglas, Jr. |

| Proceedings: | DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Filed 11/25/15)[52] |
|---|---|

## I.    INTRODUCTION

On October 16, 2014, plaintiff Advanced Cleanup Technologies, Inc. ("ACT") filed the instant action in Los Angeles County Superior Court against defendants BP America, Inc. ("BP") and Does 1 through 10 (collectively, "defendants"). Dkt. 1. On November 21, 2014, defendants removed this action to this Court. Id. On August 17, 2015, defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 33. On October 9, 2015, the Court granted defendants motion without prejudice. Dkt. 49. Accordingly, on November 9, 2015, plaintiff filed the operative First Amended Complaint ("FAC"). Dkt. 51. The FAC asserts claims against defendants for: (1) breach of written contract; (2) account stated; (3) open book account; (4) quantum meruit; and (5) unjust enrichment. See generally FAC. In brief, plaintiff alleges that it is owed approximately $1.7 million for cleanup work it performed for defendants in connection with the *Deepwater Horizon* oil spill in 2010. Id.

On November 25, 2015, defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 52. On December 14, 2015, plaintiff filed an opposition, Dkt. 54, and on December 21, 2015, defendants filed a reply, Dkt. 55. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

## II. BACKGROUND

Plaintiff alleges the following facts: On April 20, 2010, the *Deepwater Horizon* oil rig exploded in the Gulf of Mexico. FAC ¶ 7. Following the explosion, oil flowed into the Gulf for 87 days until the spill was eventually contained on July 15, 2010. Id. The total discharge of oil has been estimated at 210 million gallons. Id.

Pursuant to a 2007 agreement entitled Emergency Response Service Agreement (the "ERS Agreement"), ACT had contracted with BP to provide oil spill cleanup services in the event of a release of oil or other hazardous materials into the environment. Id., Ex. A. Under the terms of the agreement, BP was entitled to request emergency response services from ACT in the event of an emergency. Id. § 1(A). In June 2010, in the aftermath of the spill, ACT entered into an agreement entitled Master Time Charter Agreement (the "Charter Agreement") with All Quest ("Quest"). Id. ¶ 8. ACT alleges that Quest was an agent of BP. Id. Between June 2010 and October 31, 2010, ACT performed oil spill cleanup services in connection with the *Deepwater Horizon* spill. Id. ¶ 11. ACT contends that these services were performed pursuant to both the ERS and Charter Agreements. Id.

During the course of its cleanup work, ACT submitted thirteen invoices to Quest requesting payment for work performed. Id. ¶ 12. The total amount of these invoices was $4,191,329.51. Id. Nonetheless, ACT alleges that Quest made payments of only $971,520.00 on these invoices. Id. ¶ 23. ACT alleges that, as of November 19, 2010, the unpaid balance on its invoices was $3,219,809.51. Id.

As a result of Quest's failure to pay these invoices, ACT contends that it was put into "extreme financial duress and financial hardship." Id. ¶ 15. Specifically, ACT alleges that, at this time, it was "effectively insolvent" and that its bank account regularly reflected a negative daily balance. Id. ¶¶ 17-19, 28. ACT further alleges that it was unable to make its monthly payment obligations and could not make payroll. Id. ¶ 28. Finally, ACT alleges that it was delinquent with its creditors and that, unless these creditors received "a prompt substantial payment," they intended to "utilize all available debt collection practices to collect from ACT, including, but not limited to, putting ACT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

into involuntary bankruptcy." Id. ¶ 29. ACT contends that it informed Quest of its financial difficulties and demanded that Quest pay its invoices in full. Id. ¶¶ 25, 28-29.

Despite these requests, ACT alleges that Quest categorically refused to pay the $3,219,809.51 balance on ACT's invoices. Id. ¶ 34. Instead, Quest offered to make ACT a payment of $1,484,800 if ACT would agree to sign a settlement agreement (the "Settlement Agreement") releasing any and all claims ACT may have against either Quest or BP in connection with the work it performed on the *Deepwater Horizon* spill. Id. ¶ 32; Dkt. 35-1. ACT contends that this offer was made on a "take-it-or-leave-it" basis and that ACT was given no opportunity to negotiate the release sum. Id. ¶ 34. ACT further contends that the release payment offered by Quest was absolutely necessary to stave off ACT's creditors. Id. ¶ 32. Accordingly, on November 30, 2010, ACT agreed to the Settlement Agreement. Id.

BP contends that all of the claims asserted by ACT in the FAC are barred by the Settlement Agreement.

### III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

     Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

     As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

## IV.   ANALYSIS

### A.   Economic Duress

Defendants argue that the Court should dismiss ACT's claims because they are barred by the Settlement Agreement. The Court has already determined that, in light of the exceptionally broad language contained in the Settlement Agreement, "all of the claims in ACT's complaint were released under the [S]ettlement [A]greement." Dkt. 49. Nonetheless, ACT argues that the agreement should be set aside as either void or unenforceable because it was procured through economic duress.

"Under California law, economic duress can serve as a basis for rescinding a settlement agreement and/or release." Tanner v. Kaiser Found. Health Plan, Inc., 2015 WL 7770216, at *3 (N.D. Cal. Dec. 3, 2015) (citing Cal. Civ. Code § 1689 (b)(1) (a party to a contract may rescind the contract if his or her consent was "obtained through duress, menace, fraud, or undue influence")). "[T]he doctrine [of economic duress] . . . may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154, 1158 (1984). Further, a reasonably prudent person "may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." Id. at 1159.

The burden to establish economic duress is a high one, and courts "will apply 'economic duress' only in limited circumstances and as a 'last resort.' " San Diego Hospice v. Cnty. of San Diego, 31 Cal. App. 4th 1048, 1058 (1995) (citations omitted). Nonetheless, courts have also recognized that the existence of economic duress raises a number of factual inquiries that are ill-suited to resolution at the pleading stage. See Cross Talk Prods., Inc. v. Jacobson, 65 Cal. App. 4th 631, 644 (1998) ("Whether the party asserting economic duress had a reasonable alternative is determined by examining whether a reasonably prudent person would follow the alternative course, or whether a reasonably prudent person might submit. Clearly this inquiry is a factual one, rarely if ever susceptible to determination on demurrer.") (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

Here, ACT alleges that, as of November 2010, it was owed $3,219,809.51 from Quest for oil spill cleanup services. FAC ¶ 23. Nonetheless, ACT alleges that, rather than paying this debt, Quest threatened to breach its contract with ACT by "categorically refusing" to make payments on ACT's unpaid invoices. Id. ¶ 34. Instead, Quest offered to settle its debts with ACT for only $1,484,000—roughly 46% of Quest's total debt to ACT. Id. ¶¶ 32, 34. ACT further alleges that this settlement offer was made on a "take-it-or-leave-it" basis and that ACT was given no opportunity to negotiate the settlement offer. Id. ¶ 34. Finally, ACT alleges that, at the time Quest made the settlement offer, ACT was under "extreme financial distress," and that Quest knew about ACT's financial struggles and took advantage of them to extort a settlement agreement. Id. ¶ 30. For example, ACT contends that it advised Quest "that the company was effectively insolvent, that ACT could not make its monthly payment obligations, and that ACT would be forced to go out of business or file for bankruptcy if the unpaid invoices were not paid." Id. ¶ 28. ACT also contends that it informed Quest that ACT was delinquent with its creditors and that, unless these creditors received "a prompt substantial payment," they intended to "utilize all available debt collection practices to collect from ACT, including, but not limited to, putting ACT into involuntary bankruptcy." Id. ¶ 29.

The Court finds that, based on these allegations, ACT has sufficiently pled economic duress in the FAC. ACT has alleged that Quest engaged in a "wrongful act" by threatening to withhold payment on the more than $3 million it owed to ACT. See Chan v. Lund, 188 Cal. App. 4th 1159, 1174 (2010) ("The assertion of a claim known to be false or *a bad faith threat to breach a contract or to withhold a payment* may constitute a wrongful act for purposes of the economic duress doctrine.") (emphasis added). Furthermore, ACT has alleged facts showing that, had it not accepted Quest's settlement offer, it would have faced financial ruin. See Rich & Whillock, Inc., 157 Cal. App. 4th at 1159 ("[A] reasonably prudent person subject to such an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin."). Accordingly, it is plausible that a reasonably prudent person in ACT's position would have had no reasonable alternative but to accept Quest's settlement offer.

Notwithstanding the foregoing, defendants contend that ACT has failed to plead all of the necessary elements for economic duress. Specifically, defendants argue that ACT was required to allege that, as to the unpaid balance on ACT's invoices, Quest "knew that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

there was no legitimate dispute and that it was liable for the full amount." Defendants' argument is based on a misreading of the relevant California case law.

Defendants rely upon a purported statement of the elements of economic duress in San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048 (1995). The court in San Diego Hospice, in turn, based its analysis on a summary of Rich & Whillock, Inc., 157 Cal. App. 3d 1154 (1984) —the leading case from the California Court of Appeal regarding the doctrine of economic duress. However, nothing in either San Diego Hospice or Rich & Whillock suggests that the debtors acknowledgment of their debt is a required element to establish economic duress. Rather, in San Diego Hospice, the California Court of Appeal stated:

> In Rich [&] Whillock *several criteria* coalesced to raise "economic duress" as a ground to escape a settlement: (1) *the debtor knew there was no legitimate dispute and that it was liable for the full amount*; (2) the debtor nevertheless refused in bad faith to pay and thereby created the economic duress of imminent bankruptcy; (3) the debtor, knowing the vulnerability its own bad faith had created, used the situation to escape an acknowledged debt; and (4) the creditor was forced to accept an inequitably low amount.

157 Cal. App. 4th at 1059 (emphasis added).

A clear reading of San Diego Hospice indicates that defendants place too much weight on this case. At most, the Court of Appeal stated only that acknowledgment of a debt is one of "several criteria" to be considered in evaluating whether a settlement agreement should be set aside on the basis of economic duress. In fact, the Court of Appeal went on to state that, because "[n]one of the *factors* present in Rich & Whillock was present here" the settlement agreement at issue should not be set aside. Id. (emphasis added); see also A.M. Classic Constr., Inc. v. Cnty. of L.A. Dept. of Public Works, 2015 WL 878811, *5 (Cal. Ct. App. Feb. 27, 2015) ("Courts have thus recognized several criteria relevant to the economic distress basis for rescission: '(1) the debtor knew there was no legitimate dispute and that it was liable for the full amount'. . ."). These "criteria" or "factors" may be relevant to issues of proof at trial or on a motion for summary judgment. However, at the pleading stage, the Court finds that it is sufficient for ACT to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

allege that Quest engaged in a "wrongful act" that was sufficiently coercive such that a reasonable person faced with no reasonable alternative would have succumbed to Quest's pressures. Moreover, the Court has found no authority holding that the San Diego Hospice criteria constitute express pleading requirements and numerous California district courts have evaluated claims for economic duress in the context of a Rule 12(b)(6) motion without any mention of these criteria. See, e.g., Tanner, 2015 WL 7770216, at *3-4; Scooter's Pals Rescue v. Cnty. of Placer, 2013 WL 5947753, *4-5 (E.D. Cal. Nov. 4, 2013); Zone Sports Ctr. v. Red Head, Inc., 2011 WL 3862007, *5 (N.D. Cal. Sep. 1, 2011); Perez v. Ocwen Loan Servicing, 2011 WL 2680503, *4 (S.D. Cal. Jul. 8, 2011). Therefore, the Court rejects defendants argument that ACT was required to plead in the FAC that Quest "knew that there was no legitimate dispute and that it was liable for the full amount" of ACT's unpaid invoices.

In accordance with the foregoing, the Court finds that ACT has adequately pled economic duress in the FAC. The Court therefore DENIES defendants' motion to dismiss on the basis that plaintiff's claims are barred by the Settlement Agreement.

### B.     Breach of Contract

BP asserts that ACT has failed to adequately plead a claim for breach of contract. To state a claim for breach of contract under California law, a party must plead: (1) the existence of a contract; (2) his or her performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damage. Vaccarino v. Midland Nat. Life Ins., Co., 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (citing Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008)).

Here, ACT asserts that it had a written agreement with BP—the ERS Agreement. ACT alleges that it performed oil spill cleanup services for BP pursuant to this agreement and that BP breached this agreement by failing to pay ACT for this work. Defendants' argue, however, that ACT has failed to establish that BP breached the ERS Agreement. Specifically, defendants argue that the allegations in the FAC indicate that ACT's oil spill cleanup work was performed, not pursuant to the ERS Agreement, but rather pursuant to the separate and independent Charter Agreement between ACT and Quest. The Court agrees. First, as drafted the ERS Agreement does not refer to any particular project or emergency requiring oil spill cleanup services. Rather, it merely entitles BP to "request

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

[ACT's] emergency response services" if BP deems them necessary. FAC, Ex. A, § 1(A). By contrast, the Charter Agreement provides that ACT will provide a vessel for a three month term beginning on June 14, 2010—i.e., only two months after the *Deepwater Horizon* spill began—and that this vessel would perform work in the waters off the coasts of Louisiana, Mississippi, and Alabama—i.e., the region where the *Deepwater Horizon* spill occurred. FAC, Ex. B. Accordingly, while the ERS Agreement merely grants BP the right to hire ACT for oil spill cleanup work, the Charter Agreement in fact hired ACT to perform specific oil cleanup operations in the Gulf of Mexico.

      Second, the FAC contains numerous allegations regarding how Quest breached the Charter agreement. The FAC explains in detail how ACT sent Quest thirteen invoices requesting payment for oil spill cleanup work, how Quest failed to pay over $3 million of these invoices, how ACT demanded payment from Quest, and how ultimately Quest forced ACT to accept an inequitably low settlement offer. See FAC ¶¶ 12-40. By contrast, the FAC contains virtually no allegations regarding how BP breached the ERS Agreement.

      Moreover, the ERS Agreement contains numerous requirements that must be satisfied before BP is liable to pay ACT for any work preformed under the agreement. See FAC, Ex. A. Specifically, the ERS Agreement states that work performed pursuant to the agreement must be expressly authorized by BP, either by letter of release, work order, or phone call. Id. § 1(A). Once BP requests work, it must promptly issue to ACT a purchase order and paykey describing the scope of the work to be performed and designating BP and ACT as representatives authorized to act with respect to the requested work. Id. § 1(G). The ERS Agreement also contains a number of requirements and responsibilities that ACT must fulfill in performing the requested work. For example, ACT must maintain daily work sheets identifying, by hour, the personnel and equipment performing the requested work. Id. § 1(B). These work sheets must be approved by a BP representative on a daily basis. Id. Prior to performing any work, ACT is required to "conduct a site safety assessment and develop a site safety plan." Id. § 2(A). ACT is also obligated to "erect and properly maintain . . . necessary safeguards for the protection of its employees" and keep "full and detailed records concerning personnel, labor materials, tools, equipment, and subcontractors provided by it" in performing the requested work. Id. § 2(E). Finally, in order to receive payment for work performed under the ERS Agreement, ACT must submit invoices *to BP* on a monthly basis. Id. § 4(B). These

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

invoices must include, among other information, the purchase order and paykey numbers provided to ACT by BP and a description of the personnel, tools, materials, and equipment provided in performing the invoiced work. Id.

The FAC contains no specific allegations regarding any of these requirements or that BP every expressly authorized ACT to perform oil spill cleanup work pursuant to the ERS Agreement. Instead, ACT argues that Quest was BP's agent and that "[i]t is black-letter law that BP, as the principal, is liable for the acts of its agents." Opp., at 9. ACT is correct that a principal may be liable for the acts of its agents. However, "[t]o sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." Imageline, Inc. v. CafePress.com, Inc., 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011) (citing Sonora Diamond Corp. v. Superior Court, 83 Cal. App.4th 523, 541 (2000)). Furthermore, the essential elements of an agency relationship, which a plaintiff must allege, are: (1) that the agent or apparent agent holds the power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of the agency; and (3) that the principal has the right to control the conduct of the agent with respect to matters entrusted to him. Palomares v. Bear Sterns Residential Mortg. Corp., 2008 WL 686683, *4 (S.D. Cal. Mar.13, 2008) (citing Garlock Sealing Technologies LLC v. NAK Sealing Technologies Corp., 148 Cal. App. 4th 937, 965 (2007)).

Here, the FAC contains little more than conclusory allegations that Quest was BP's agent. See, e.g., FAC ¶ 8 ("[I]n June 2010, ACT entered a written agreement with BP's agent, All Quest"); Id. ¶ 35 ("All Quest, who was BP's agent"). While, a court must accept all factual allegations in a complaint as true, mere legal conclusions, such as these, are not entitled to the presumption of truth. See Iqbal, 556 U.S. at 679; see also, Imageline, Inc., 2011 WL 1322525, at *4 (finding allegations that "each defendant was the 'agent, partner, servant, supervisor, employee, successor and/or joint venturer of each of the remaining defendants' " were "nothing more than legal conclusions of the type prohibited by Iqbal and Twombly."). The only factual allegations in the FAC regarding the relationship between ACT and BP are that BP paid Quest for ACT's work and that, at some point, BP stopped paying Quest, allegedly on the grounds that Quest was engaging in billing fraud. FAC ¶ 27. As BP argues, these allegations, by themselves, demonstrate nothing more than that a business relationship existed between BP and Quest. See also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

Hines v. Wells Fargo Home Morg., Inc., 2015 WL 351818, *4 (E.D. Cal. Jan. 26, 2015) ("The FAC also alleges that West Coast Financial 'worked closely with' and 'in concert with' Defendant. These statements—even if the Court, as it must, takes them as true—do not establish an agency relationship. That two companies worked together does not necessarily mean that one company was the agent of the other.").

Accordingly, ACT has failed to plead facts showing either that BP breached the ERS Agreement or that BP is liable, as the principal for Quest, for any alleged breaches of the Charter Agreement. The Court therefore GRANTS WITHOUT PREJUDICE defendants' motion to dismiss plaintiff's claim for breach of contract.

### C. Account Stated

Next, BP argues that plaintiff has failed to state a claim for account stated. The Court agrees. An account stated is an agreement between two parties to settle an existing debt. See Gleason v. Klamer, 103 Cal. App. 3d 782, 786 (1980) ("An account stated is an agreement, based on the prior transactions between the parties, that the items of the account are true and that the balance struck is due and owing from one party to another."). To state a claim for account stated a plaintiff must plead: "(1) previous transactions between the parties establishing the relationship of debtor and creditor [i.e., an existing debt]; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." Zinn v. Fred R. Bright Co., 271 Cal. App. 2d 597 (1969) (citations omitted).

Here, ACT's claim for account stated is based solely on the invoices it sent to Quest, which Quest allegedly refused to pay. See FAC ¶ 43 ("The account stated in writing is reflected in 13 invoices . . . for the work performed at BP's and All Quest's request and pursuant to both the ERS Agreement with BP and the Charter Agreement with All Quest."). However, as already stated, ACT has alleged insufficient facts to show that BP was ever liable to pay for the work reflected in these invoices. Accordingly, ACT has failed to allege facts showing the existence of a debt from which BP and ACT could have formed an account stated. See also Witkin, Summary of California Law, § 973 (2005) ("[T]he statement cannot create a liability where none existed before.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

Further, even assuming BP was liable for ACT's unpaid invoices, under California law, a claim for account stated may not be "predicated upon the breach of the terms of an express contract." Nat'l. Ins. Co. of Hartford v. Expert Automotive Reconditioning, Inc., 2013 WL 6190591 (C.D. Cal. Nov. 24, 2013). Rather, to establish a claim for account stated, a plaintiff must show the existence of a "new contract by and under which the parties have adjusted their differences and reached an agreement." Gardner v. Watson, 170 Cal. 570, 574 (1915). Here, ACT fails to allege the existence of any "new contract" with BP or how "the parties have adjusted their differences." Instead ACT simply seeks to recover the amounts it claims are due and owing under either the Charter or ERS Agreements—i.e., ACT's express contracts with BP and Quest. See FAC ¶ 43. Accordingly, because ACT fails to allege that it formed a new agreement—independent of any of its express agreements—with BP to settle an existing debt, it has failed to state a claim for account stated.

For the foregoing reasons, the Court GRANTS WITHOUT PREJUDICE defendants motion to dismiss plaintiff's claim for account stated.

### D. Open Book Account

ACT also asserts a claim for open book account. "An open book account is a detailed statement that constitutes the principal record of the transactions between a creditor and debtor arising out of a contract or fiduciary relationship, including the debits and credits." H & C Global Supplies SA DE CV v. Pandol Assocs. Mktg., Inc., 2013 WL 5954812, at *2 (E.D. Cal. Nov. 6, 2013) (citing Cal. Code Civ. Proc. § 337a.). Here, again, ACT bases its claim for open book account solely on its express contracts with BP and Quest. See FAC ¶ 48 ("BP became indebted to ACT . . . on an open book account for oil spill cleanup services rendered by ACT at BP's special insistence and request, *pursuant to the ERS Agreement and the Charter Agreement*.") (emphasis added). "An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." Durkin v. Durkin, 133 Cal. App. 2d 283, 290 (1955). Instead, "under California law, money due under an express contract cannot be recovered in an action claiming an open book account unless there is a contrary agreement by the parties." H & C Global Supplies SA DE CV, 2013 WL 5954812, at *2 (citing Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1395 n. 9 (2004)). Here, ACT makes no allegation that there is a "contrary agreement"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

between the parties; rather, in the FAC, ACT appears to have simply restyled its claim for breach of contract as a claim for open book account.

Accordingly, ACT has failed to state a claim for open book account and the Court GRANTS WITHOUT PREJUDICE defendants' motion to dismiss ACT's claim for open book account.

### E. Quantum Meruit and Unjust Enrichment

Finally, plaintiff asserts two claim that are in the nature of quasi-contract—quantum meruit and unjust enrichment.  "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant."  In re De Laurentiis Ent. Grp. Inc., 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted).  The elements of a claim based on quantum meruit are: "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid."  Cedars Sinai Med. Ctr. v. Mid–West Nat'l. Life Ins. Co., 118 F.Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing Haggerty v. Warner, 115 Cal. App. 2d 468 (1953)).

Here, all four of the elements of a quantum meruit claim are alleged in the FAC. ACT has alleged that it "provided oil spill cleanup services in connection with the Deepwater Horizon oil spill for the sole and exclusive benefit of BP."  FAC ¶ 53.  ACT further alleges that the reasonable value of the services it provided is $1,735,009.61 and that this amount has gone unpaid since at least November of 2010.  Id. ¶ 54.  Finally, ACT asserts that it provided the oil spill cleanup services at the request of BP.  Id. ¶ 53.

Similarly, "[u]nder California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." Valencia v. Volkswagen Grp. of Am. Inc., 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015) (citing Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)).  Here, ACT alleges repeatedly in the FAC that it provided oil spill cleanup services for the sole benefit of BP.  See, e.g., FAC ¶¶ 9, 58, 60.  Moreover, ACT has alleged that is has not been paid for many of these services and that "BP will be unfairly and unjustly enriched

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

at ACT's expense[] and detriment" if it is not required to pay ACT for the services it performed. Id. ¶ 60.

Accordingly, ACT has adequately stated claims for both quantum meruit and unjust enrichment. Nonetheless, defendants argue that both of these claims must fail "because there is an express written contract with BP—the ERS Agreement—that sets out the parties' relationship for oil spill cleanup operations and therefore precludes equitable remedies." Mot., at 11.

As a general matter, where two parties have an express agreement, a court may not imply an equitable remedy that contradicts the parties agreement. See Hedging Concepts, Inc. v. First Alliance Mortg. Co., 41 Cal. App. th 1410, 1419 (1996) ("[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation."); Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613 (1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.").

However, as stated *supra*, the Court has found that there are insufficient allegations in the FAC that ACT's oil spill cleanup work was performed pursuant to the ERS Agreement. Rather, the Court has accepted defendants' argument that ACT performed its work pursuant to the separate and independent Charter Agreement with Quest. In fact, there is an inherent inconsistency in defendants' argument. On the one hand, in defending against ACT's breach of contract claim, defendants argue that none of ACT's oil spill cleanup work was performed pursuant to the ERS Agreement; however, in defending against ACT's quasi-contract claims, defendants argue that the ERS Agreement must nonetheless govern the parties' relationship regarding all oil spill cleanup up work performed by ACT.

Defendants claim that their position is not inconsistent and argue that, even if ACT performed work on the *Deepwater Horizon* spill pursuant to the Charter Agreement, "the fact remains that there is still an ERS Agreement which embodies any and all rights between ACT[] and BP related to oil spill remediation." Reply, at 7. However, defendants take too broad an interpretation of the ERS Agreement. As defendants themselves have argued, not all of ACT's oil spill cleanup work automatically falls within the purview of the ERS Agreement. Rather, in order to trigger application of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

ERS Agreement, BP must expressly authorize work in a particular manner. Specifically, the agreement states: "work to be performed hereafter shall be authorized by [BP] either by letter of release or work order or [BP] shall be entitled to request [ACT's] emergency response services upon giving notice by telephone 24 hours per day, seven (7) days per week by calling 800-334-2284." FAC, Ex. A, § 1(A). Here, while ACT does allege that BP requested that ACT perform oil spill cleanup work, it does not allege that ACT requested this work in the manner set forth in the ERS Agreement, i.e., by letter of release, work order, or by giving notice by telephone. Moreover, the ERS Agreement states that when BP requests work pursuant to the ERS Agreement it must promptly issue to ACT a purchase order and paykey describing the scope of the work to be performed and designating BP and ACT as representatives authorized to act with respect to the requested work. Id. § 1(G). Again, the FAC contains no allegations that BP ever took these actions. Accordingly, as stated above it does not appear that any of ACT's oil spill cleanup operations in connection with the *Deepwater Horizon* spill fell within the purview of the ERS Agreement.

Nonetheless, defendants now argue that the ERS Agreement must still govern ACT's right to payment for oil spill cleanup services, even when those services were performed pursuant to a separate and distinct agreement, and even where BP has taken none of the steps required to trigger application of the ERS Agreement. This interpretation stretches the meaning of the ERS Agreement too far. Further, BP has identified, and the Court has found, no express provision of the ERS Agreement supporting this broad interpretation.

Accordingly, based on the allegations in the FAC, the Court cannot find that there is an express contract governing the oil spill cleanup work at issue in ACT's quantum meruit and unjust enrichment claims. Therefore, the Court DENIES defendants' motion to dismiss these claims.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS WITHOUT PREJUDICE** defendants' motion to dismiss plaintiff's claims for breach of contract, account stated,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV14-9033-CAS(AJWx) | Date | January 4, 2016 |
|---|---|---|---|
| Title | ADVANCED CLEANUP TECHNOLOGIES, INC., V. BP AMERICA INC., ET AL. | | |

and open book account.[1] The Court **DENIES** defendants' motion to dismiss plaintiff's claims for quantum meruit and unjust enrichment.

IT IS SO ORDERED

|  | 00 | : | 06 |
|---|---|---|---|
| Initials of Preparer | | | CL |

---

[1] At oral argument, counsel for ACT requested that it be permitted to voluntarily dismiss its claims for breach of contract, account stated, and open book account. The Court granted this request. Accordingly, while the Court dismisses these claims without prejudice, it does not grant ACT leave to amend.